No. 23-1502

---

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

TANJANEKA JONES,
Plaintiff-Appellant,

v.

ELI LILLY AND COMPANY,
Defendant-Appellee.

---

On appeal from the United States District Court for the
District of Maryland, Case No. 8:20-cv-03564-ADC,
The Honorable A. David Copperthite, Presiding

---

BRIEF OF APPELLANT

---

Janice Williams-Jones (#25701)
Law Office of Janice Williams-Jones
3201 Rogers Avenue, Suite 301
Ellicott City, Maryland  21043
Ph:  410-203-1246
lawofficeofjwjones@gmail.com
*Counsel for Plaintiff-Appellant*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 23-1502       Caption: Tanjaneka Jones v. Eli Lilly and Co.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Tanjaneka Jones
(name of party/amicus)

_____

who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation?          ☐YES ☑NO
      If yes, identify entity and nature of interest:


5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:


6.    Does this case arise out of a bankruptcy proceeding?          ☐YES ☑NO
      If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
      party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
      caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
      corporation that owns 10% or more of the stock of the debtor.


7.    Is this a criminal case in which there was an organizational victim?          ☐YES ☑NO
      If yes, the United States, absent good cause shown, must list (1) each organizational
      victim of the criminal activity and (2) if an organizational victim is a corporation, the
      parent corporation and any publicly held corporation that owns 10% or more of the stock
      of victim, to the extent that information can be obtained through due diligence.


Signature: /s/Janice Williams-Jones _____      Date: _____May 12, 2023_____

Counsel for: Appellant _____

Print to PDF for Filing

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................iv-vi

JURISDICTIONAL STATEMENT ...........................................................1

STATEMENT OF ISSUES FOR REVIEW ................................................1

STATEMENT OF THE CASE.....................................................................2

  A.  Procedural History .............................................................................2

  B.  Statement Of Facts..............................................................................4

    1.  Ms. Jones's early days in the Baltimore District of the Lilly Diabetes Business Unit.............................................................................4

    2.  Ms. Jones is transferred to the Washington, D.C. District of the Lilly Diabetes Business Unit ..........................................................5

    3.  Ms. Jones is supervised by David Sun and is put on a Performance Improvement Plan in June 2019.....................................7

    4.  Ms. Jones complains to Grace Faulkner of Lilly's Human Resources Department that Mr. Sun is discriminating against her because of her race and her sex ..........................................................8

    5.  Mr. Sun retaliates against Ms. Jones ..........................................10

    6.  Ms. Jones complains to Stephanie Long of Lilly's Human Resources Department that Mr. Sun is retaliating against her because of her race and her sex .............................................................11

    7.  Ms. Jones files a Charge of Discrimination with the EEOC.......................12

    8.  Mr. Sun did not subject a White sales representative with performance issues in 2019 to the same discipline as he applied to Ms. Jones ..............13

SUMMARY OF THE ARGUMENT .......................................................14

ARGUMENT ..........................................................................................16

  I.  THE DISTRICT COURT MISAPPLIED THE MCDONNELL DOUGLAS SHIFTING FRAMEWORK APPLICABLE TO CLAIMS OF DISPARATE DISCIPLINE ...................................................16

    A.  Standard Of Review ........................................................................16

    B.  The District Court Erred In Finding That Ms. Jones's Alleged Unsatisfactory Performance Defeated A Prima Facie Claim Of Disparate Discipline .......................................................................17

## TABLE OF CONTENTS (cont'd)

C. The District Court Erred In Finding That Ms. Jones's Alleged Unsatisfactory Performance Was A Legitimate Nondiscriminatory Reason For Placing Her On Probation ........................................................23

II. THE DISTRICT COURT MISAPPLIED THE SUMMARY JUDGMENT STANDARD BY MAKING CREDIBILITY DETERMINATIONS AND FAILING TO WEIGH THE EVIDENCE IN A LIGHT MOST FAVORABLE TO MS. JONES IN CONCLUDING THAT APPELLANT FAILED TO MAKE OUT A PRIMA FACIE CASE OF RACE AND/OR SEX DISCRIMINATION ...........................................24

A. Standard Of Review .....................................................................24

B. The District Court Improperly Weighed The Credibility Of Witnesses And Failed To View The Evidence In A Light Most Favorable To Ms. Jones...................................................................24

III. THE DISTRICT COURT MISAPPLIED THE SUMMARY JUDGMENT STANDARD BY MAKING CREDIBILITY DETERMINATIONS AND FAILING TO WEIGH THE EVIDENCE IN A LIGHT MOST FAVORABLE TO MS. JONES IN CONCLUDING THAT APPELLANT COULD NOT MAKE OUT A RETALIATION CLAIM BECAUSE SHE FAILED TO REBUT LILLY'S PROFFERED EVIDENCE THAT MR. SUN PUT HER ON PROBATION DUE TO UNSATISFACTORY JOB PERFORMANCE ......27

A. Standard Of Review .....................................................................27

B. The District Court Improperly Weighed The Credibility Of Witnesses And Failed To View The Evidence In A Light Most Favorable To Ms. Jones...................................................................28

CONCLUSION ....................................................................................30

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Ballinger v. N.C. Agriculture Extension Serv.*,
  815 F.2d 1001 (4th Cir. 1987) .......................................................... 17

*Cook v. CSX Transp. Corp.*,
  988 F.2d 507 (4th Cir. 1993) ..................................................... 17, 20

*DeJarnette v. Corning, Inc.*,
  133 F.3d 293 (4th Cir. 1998) .......................................................... 27

*Evans v. Techs. Applications & Serv. Co.*,
  80 F.3d 954 (4th Cir. 1996) ...................................................... 16, 24

*Francis v. Booz, Allen & Hamilton, Inc.*,
  452 F.3d 299 (4th Cir. 2006) .......................................................... 28

*Haynes v. Waste Connections, Inc.*,
  922 F.3d 219 (4th Cir. 2019) .......................................................... 20

*Hoyle v. Freightliner, LLC*,
  650 F.3d 321 (4th Cir. 2011) .......................................................... 17

*Jacobs v. N.C. Admin. Office of the Courts*,
  780 F.3d 562 (4th Cir. 2015) ..................................................... 16, 26

*Laing v. Fed. Express Corp.*,
  703 F.3d 713 (4th Cir. 2013) .......................................................... 27

*Lightner v. City of Wilmington*,
  545 F.3d 260 (4th Cir. 2008) .......................................................... 17

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1973) .......................................................................... 18

*Moore v. Charlotte*,
  754 F.2d 1100, (4th Cir. 1985) ................................................... 17, 18

*Reeves v. Sanderson Plumbing Prods., Inc.*,
  530 U.S. 133 (2000) .......................................................................... 24

# TABLE OF AUTHORITIES (cont'd)

*Slattery v. Swiss Reinsurance Am. Corp.*
  248 F.3d 87 (2d Cir 2001) ...................................................................... 28

*Taylor v. Va. Union Univ.,*
  193 F.3d 219 (4th Cir. 1999) ....................................................... 17-18

*Warch v. Ohio Cas. Ins. Co.,*
  435 F.3d 510 (4th Cir.), cert denied, 549 U.S. 812 (2006) ................................ 18

## Other Authority

28 U.S.C. § 1291 ...................................................................................... 1

28 U.S.C. § 1331 ...................................................................................... 1

28 U.S.C. § 1343 ...................................................................................... 1

28 U.S.C. § 1367 ...................................................................................... 1

42 U.S.C. § 1981 ............................................................................... 1, 2, 17

42 U.S.C. § 2000e ................................................................................... 1

Fed. R. App. P. 32 ................................................................................... 1

Fed. R. Civ. P. 56 .................................................................................. 16

Maryland Code, State Government Article § 20-606 ............................................ 1

## JURISDICTIONAL STATEMENT

This is an employment discrimination suit arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., the Maryland Fair Employment Practices Act ("MFEPA"), Maryland Code, State Government Article § 20-606, and 42 U.S.C. § 1981. The District Court had original jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

On April 7, 2023, the District Court granted summary judgment in favor of Defendant-Appellee, Eli Lilly and Company ("Appellee" or "Lilly"), and against Appellant, Tanjaneka Jones ("Appellant" or "Ms. Jones"), a former senior sales representative ("SSR") employed by Eli Lilly in Appellee's Washington, D.C. District of the Diabetes Business Unit. (JA257-276.) Ms. Jones timely filed a notice of appeal from the District Court's final order (JA277) on May 2, 2023 (JA278). This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES FOR REVIEW

1.  Did the District Court misapply the *McDonnell Douglas* shifting burden standard to the disparate discipline claim?

2.  Did the District Court misapply the summary judgment standard by making credibility determinations and failing to weigh the evidence in a light most favorable to Ms. Jones in concluding that Appellant failed to make out a prima facie case of race and/or sex discrimination?

3.    Did the District Court misapply the summary judgment standard by making credibility determinations and failing to weigh the evidence in a light most favorable to Ms. Jones in concluding that Appellant failed to rebut Lilly's assertion, in response to her claim of retaliation, that it placed her on probation because of her unsatisfactory performance?

## STATEMENT OF THE CASE

### A.    Procedural History

Plaintiff-Appellant Tanjaneka Jones, a Black female, timely commenced this employment discrimination action against Defendant-Appellee Eli Lilly by filing a complaint in the Circuit Court for Prince George's County, Maryland, on February 2, 2020.  Lilly removed the action to the District Court for the District of Maryland on December 9, 2020.  (JA2-3 at #1-#3.)  On October 13, 2021, Ms. Jones filed a Third Amended Complaint alleging discrimination on account of sex in violation of Title VII and the MFEPA (Count I), retaliation on account of sex in violation of Title VII and the MFEPA (Count II), discrimination on account of race in violation of 42 § 1981 (Count III), and retaliation on account of race in violation of 42 U.S.C. § 1981 (Count IV) when her supervisor at Lilly, David Sun, put her on an unwarranted Performance Improvement Plan ("PIP"), depriving her of the opportunity to earn bonuses or promotions or to apply for other positions with Lilly.  (JA8-18.)

Following the completion of discovery, Lilly filed a motion for summary judgment on October 12, 2022. (JA5 at #48.) Ms. Jones filed her response in opposition to Appellee's motion for summary judgment on November 23, 2022 (JA6 at #51 and #52), and Lilly replied to Ms. Jones's opposition to its motion on December 21, 2022. (JA6 at #55.) Upon the consent of the parties to proceed before a U.S. Magistrate Judge, the matter was assigned to the Honorable A. David Copperthite, U.S. Magistrate Judge, on March 2, 2023. (JA6 at #56-#59.) On April 7, 2023, the District Court issued a Memorandum Opinion granting Lilly's motion for summary judgment (JA257-276) and entered an Order in favor of Appellee closing the case on that same day (JA277). In reaching its decision, the District Court concluded that Appellant failed to make out a prima facie case of discrimination because she did not "show that she was satisfactorily performing her job and that other employees outside of the protected class were treated more favorably" and that even if she had made out a prima facie case of retaliation, she "failed to rebut [Appellee]'s legitimate, non-discriminatory reason for placing her on probation: namely, her unsatisfactory performance." (JA271.) The court found that Appellant had made out a prima facie case of retaliation, but that no reasonable juror could find that the professed reason for placing her on probation, her poor performance, was pretextual. (JA274-276.) Ms. Jones timely filed a notice of appeal on May 2, 2023. (JA278.)

3

**B.    Statement Of Facts**

**1.    Ms. Jones's early days in the Baltimore District of the Lilly Diabetes Business Unit**

Appellant, a Black Female with a bachelor's degree in biology and an MBA (JA28:4-15), joined Lilly as an SSR in the Baltimore District of Lilly's Diabetes Business Unit in 2014. (JA31:11-13, JA33:23-JA34:5, JA50:18-24, JA195 at ¶ 4). As an SSR, Ms. Jones was paid a base salary and was eligible for incentive compensation through Lilly's Premier Rewards Program. (JA257.) Her job required her to meet with physicians, discuss the needs of their diabetic patients with them, give them sample medications, and sell them Lilly diabetic products. (JA32:15-22.)

Although Appellant had worked in various sales roles prior to joining Lilly, she did not have previous experience in the pharmaceutical industry and initially encountered some difficulties in grasping Lilly's procedures. (JA195 at ¶¶ 5-6.) For example, in her first year with Lilly, Ms. Jones received a written warning from her White Hispanic Male supervisor, Harold Mendoza, for unacceptable performance. (JA54:15-55:12), and Mr. Mendoza rated her as not sufficiently meeting job expectations in her first year-end review in 2015. (JA59:9-15). However, Mr. Mendoza rated Appellant's performance as satisfactory in her 2016 year-end evaluation, and her subsequent supervisor in the Baltimore district, Indria Gibson, a Black female, gave Ms. Jones a satisfactory rating for 2017, as well. (JA60:13-61:7, JA258.) Ms. Jones received no further discipline while she remained in the

4

Baltimore district, and during that time her overall sales were in the top ten percent for the mid-Atlantic region. (JA195 at ¶ 7.) Timothy Schott, the White Male Executive Sales Representative with whom she teamed in the Baltimore District considered her "a good sales partner." He enjoyed working with her and found her "very sharp [and] good on her feet." (JA222:11, 223:7-9, JA244:18-19.)

### 2. Ms. Jones is transferred to the Washington, D.C. District of the Lilly Diabetes Business Unit

Appellant's continued success on the job was interrupted in February 2018 when she was transferred to the Washington, D.C. District of the Diabetes Business Unit, due to a company realignment. (JA61:22-62:3.) For the next year, Ms. Jones's supervisor in the Washington, D.C. District was Jacqueline Porter, a Black female. (JA61:8-21, 62:14-24.) Because she was eight months pregnant at the time of the transfer, Appellant worked under Ms. Porter for only one month before taking three months of maternity leave from March 21, 2018 to June 3, 2018. (JA196 at ¶¶ 8-9). During this period, she was forced to miss training offered by Lilly in Chicago on pre-call planning strategies. (JA196 at ¶ 10.) Unfortunately, about a month after her return from maternity leave, Ms. Jones was required to take three months of medical leave from July 10, 2018 to October 3, 2018 for emergency neck surgery. (JA196 at ¶ 9.) Two months after Ms. Jones returned to work the second time, Ms. Porter gave Appellant a year-end performance evaluation of "not sufficiently meeting job expectations" for the year, explaining that Appellant needed to focus on

5

pre-call planning and value-based selling ("VBS").  (JA65:13-22, JA196 at ¶ 11.)

Ms. Porter's evaluation, issued after accompanying Ms. Jones on a single field visit,

did not acknowledge that Ms. Jones had not had an opportunity to develop her client-

base because she had only worked in the Washington, D.C. district for one month

before taking maternity leave and then she had only one more nonsequential month

of service before taking emergency medical leave.  Nor did the performance

evaluation mention that Ms. Jones was unable to attend pre-call training while on

maternity leave.  Instead, Ms. Porter rated Appellant's performance as if she had

been in the office for the entire 2018 year.  (JA196 at ¶¶ 11-13.)  Ms. Jones

complained to Lilly's Human Resources Department that Ms. Porter's evaluation

was unfair under the circumstances just mentioned, but she was unable to get Lilly

to modify the assessment.  (JA197 at ¶ 14.)

Ms. Jones was supervised by White Male Mark Hudson from February 2019

to May 2019.  (JA68:7-69:22, 71:8-15.)  Mr. Hudson contacted HR, inquiring about

past problems with Ms. Jones's performance, before he accompanied her on a single

ride-along.  (JA197 at ¶ 16.)  He then went on two ride-alongs with Appellant and

criticized her pre-call planning, (JA69:13-19, JA197 at ¶ 15) and told her she would

be placed on a PIP. (JA106:12-13).  However, he was not her supervisor at the time

of her next annual performance review.

### 3.  Ms. Jones is supervised by David Sun and is put on a Performance Improvement Plan in June 2019

On June 1, 2019, Asian Male David Sun became Appellant's supervisor. (71:16-24.)  At the time Mr. Sun became her supervisor, Ms. Jones's territory had the top sales results in the mid-Atlantic region and her sales were the second highest in the Washington, D.C. district, much higher than the sales of Brandon Fell, a White Male SSR also supervised by Mr. Sun.  (JA197 at ¶¶ 17-18.)  Nonetheless, on June 29, 2019, less than one month after he had begun supervising her and after accompanying her on only one field visit, Mr. Sun put Ms. Jones on a PIP. (JA106:17-19; 128:14-19, JA173-175, JA197 at ¶ 19.)  As a consequence of the PIP, Appellant was not eligible for promotions.  (JA197 at ¶ 19.)  The PIP was plainly labeled "disciplinary action."  (JA175.)  Appellant agreed to the PIP because she believed that Mr. Sun would help her reach the goals of the PIP by explaining what he expected of her job performance.  (JA197 at ¶ 19.)

However, rather than explaining what he wanted from Appellant or offering her constructive criticism, Mr. Sun was dismissive of her and hostile toward her, being overly critical during sales calls and minimizing her successes.  (JA197 at ¶ 20.)  For instance, on one occasion Appellant had a particularly successful visit with a physician at the close of which the doctor shook Ms. Jones's hand in appreciation for all the details she had given.  Rather than report those positives in his report, Mr. Sun focused on the fact that Appellant suggested that the physician might want to

7

consider prescribing Glyxambi, one of the drugs in the diabetes portfolio, even though the doctor had previously prescribed only Jardiance. (JA126:19-128:1.) And when Ms. Jones showed improvement, Mr. Sun found a way to spin it as unfavorable, saying her performance was "inconsistent." (JA128:7-10.) He did not credit Ms. Jones's accomplishments, including her strong sales record—second highest on his team—and client relationships. As an example, he minimized the compliment of a Black Female Doctor named Dr. Donna Eversley about Ms. Jones's performance during a sales call, claiming the doctor was not "genuine" and "was just saying what we wanted to hear." (JA198 at ¶ 21.) Perhaps most disturbingly, even if Appellant and Mr. Sun verbally agreed that her pre-call planning was excellent in offices number one through four of a ride-along, Mr. Sun would over-scrutinize her performance in office number five to ensure he could claim she did one thing wrong. (JA198 at ¶¶ 21-22.)

4. **Ms. Jones complains to Grace Faulkner of Lilly's Human Resources Department that Mr. Sun is discriminating against her because of her race and her sex**

During weekly meetings with Grace Faulkner of Lilly's Human Resources Department as part of the PIP during August, September, and October of 2019, Ms. Jones frequently complained that Mr. Sun was abusive and dismissive on ride-alongs and failed to assist her in meeting her PIP goals because she was female. (JA198 at ¶¶ 23-24.) Later, after talking to Black colleagues at Lilly and learning of their

experiences with Mr. Sun, Ms. Jones complained to Ms. Faulkner that Mr. Sun's treatment of her was also based on her race. Krystal Allen ("Ms. Allen"), a Black Female, reported to Appellant that Mr. Sun made her cry during a ride-along because he was so negative and unfair and described him as attacking, negative, critical, unpleasant, and not "motivating." (JA198 at ¶ 25, JA227-228.) William White, a Black Male, also said Mr. Sun was hostile toward him, which shocked him since he had worked for Lilly for less than four months at the time. (JA86:10-87:11, JA198 at ¶ 25.) Among other things, Mr. White stated that Mr. Sun treated him differently than his White colleagues, talking "at" him, rather than "to" him, magnifying Mr. White's mistakes and minimizing his successes, falsely accusing Mr. White of lying, telling Mr. White he "did not like [his] style," and, on one occasion when Mr. White had timely submitted one of his first expense reports, which was missing a receipt, rather than pointing out the need for the receipt, Mr. Sun returned the entire expense report to Mr. White and then wrote him up for submitting an untimely report when Mr. White returned the report with the receipt after the deadline. (JA230-232 at ¶¶ 7-10, 12-13, 16, and 19.)

During an October 15, 2019 meeting with Ms. Faulkner, Ms. Jones gave several examples of Mr. Sun's sexist and racist behavior. Ms. Jones reported that he called her overemotional and dismissed her question during a group meeting but answered the same question from a White sales representative. (JA82:1-20.) Ms.

9

Faulkner told Appellant that she discussed her complaints with Mr. Sun. (JA198 at ¶ 26.) She also conducted an investigation into Ms. Jones's complaints, which consisted of interviewing other female members of Ms. Jones's team. Ms. Faulkner concluded that there was no evidence that Mr. Sun was unfair, a liar, or ineffective in his leadership. (JA226.) However, the findings in Ms. Faulkner's written report of the investigation demonstrate that, with the exception of Catherine Jones, a Black Female SSR, Female sales representatives of color, including Ms. Allen and Sonya Raikar, an Indian/Asian Female, stated that Mr. Sun was overly negative and critical, attacking and unwilling to help them. Ms. Raikar labeled him "demotivating." White Females, on the other hand, thought he was a good supervisor. (JA227-229.) Jazmine M. Perry, a Black Female sales representative who began working for Mr. Sun in December 2019 and thus was not interviewed by Ms. Faulkner in her investigation of Appellant's complaint, had an experience similar to Ms. Jones's in that Mr. Sun was hypercritical of her performance, misstated information on reports of her performance, and was more aggressive toward her than to White sales representatives under his supervision. (JA239-242.)

**5.    Mr. Sun retaliates against Ms. Jones**

On October 16, 2019, the day after Appellant's meeting with Ms. Faulkner that prompted the investigation, Mr. Sun put Ms. Jones on probation for three months. (JA176.) In the probation notice, Mr. Sun advised Ms. Jones that while on

probation she must meet Lilly performance standards in the areas of providing

positive customer experiences, structuring a pre-call plan within the VBS model,

achieving adequate call progression, communicating with her supervisor, and

meeting administrative deadlines.    (JA178-179.)    The Notice of Probation

concluded:

> As a result of receiving this disciplinary action, I will document this
> action in your Performance Management year-end summary, and you
> will be deemed as not sufficiently meeting expectations for 2019[.] You
> will be ineligible for a base pay increase, promotional consideration,
> and [a] Total Equity Program ("TEP") grant, if applicable, for 2019.
>
> In addition, you will be ineligible for any incentive Pay under the
> Premier Rewards Plan as described [in the Notice of Probation],
> regardless of the duration of your probation[.]

(JA179-180.)    According to Ms. Faulkner, probation was the final step before

termination.  (JA255:17-22.)

### 6.    Ms. Jones complains to Stephanie Long of Lilly's Human Resources Department that Mr. Sun is retaliating against her because of her race and her sex

Ms. Jones did not see any improvements in Mr. Sun's attitude toward her after

being put on probation, so she consulted Stephanie Long in Lilly's Human

Resources Department on November 1, 2019.  (JA154:3-12.)  Ms. Long referred

Appellant to Richard Ruth, Executive Director of Human Resources.  Ms. Jones

reiterated her complaints that Mr. Sun lied about her performance in written

summaries, prevented her from getting off the PIP, and treated Black sales

representatives, both Male and Female, more harshly than White sales representatives. At Ms. Jones's request, Mr. Ruth spoke with Krystal Allen and William White. He apparently concluded that there was no race or sex discrimination, because Ms. Allen allegedly told him that she had made up with Mr. Sun after he made her cry during a field visit and she believed he treated everyone consistently, and Mr. White stated that there was a 50/50 chance that Mr. Sun's negative conduct against him was based on race discrimination. (JA154:23-157:23.) Mr. White, whose employment with Lilly was terminated in December 2019 (JA233 at ¶ 38), later acknowledged that he had told Lilly's Human Resources Department that there was a 50/50 chance that Mr. Sun acted with discriminatory intent, but he explained that at the time he made the statement he was a new employee and did want to complain and be perceived as a troublemaker. (JA231 at ¶ 14). After speaking with Appellant and Jazmine Perry and learning that they had been treated the same way he had been treated by Mr. Sun, he believes that Mr. Sun acted in a racially discriminatory manner. (JA232 at ¶ 24.)

### 7. Ms. Jones files a Charge of Discrimination with the EEOC

Having received no satisfaction from the investigations by Lilly's Human Resources Depart, on November 13, 2019, Ms. Jones filed a Charge of Discrimination against Lilly with the Equal Employment Opportunity Commission. alleging that Mr. Sun discriminated against her due to sex and race, restricted her

bonus, and placed her on probation in retaliation for her complaints to Human Resources.  In December 2019, Ms. Jones involuntarily resigned from Lilly. (JA199 at ¶ 33.)

### 8.     Mr. Sun did not subject a White sales representative with performance issues in 2019 to the same discipline as he applied to Ms. Jones

Brandon Fell ("Mr. Fell") was a White Male sales representative supervised by Mr. Sun who also had performance issues in 2019.  In Mr. Fell's 2019 Wrap-Up, Mr. Sun noted that Mr. Fell "missed many fundamental metrics." (JA237.)  Mr. Fell did not meet the standards of the Washington, D.C. district for number of customer business meals and customer visits, and his P2P execution was in the bottom one-third of the district.  Mr. Sun instructed that "an immediate improvement to meet the basic requirement[s] for 2020 is necessary." (JA237.)   Nonetheless, Mr. Sun did not discipline Mr. Fell in 2019.  Instead, he gave him a satisfactory performance evaluation and time to improve his performance with no impact on his eligibility for raises, bonuses, or promotions. (JA237.)  The 2019 Wrap-Up did not mention a PIP, and it was not labeled "disciplinary action." (JA234-237.)

Three months later, Mr. Fell's performance had not improved, and Mr. Sun gave him discipline in the form of a Written Warning on March 13, 2020. (JA192-194.)  The Written Warning noted the following violations of Lilly policies:  (1) using an unapproved app on a sales call, a serious violation, (2) storing refrigerated

13

drug samples improperly, (3) missing field rides with Mr. Sun, (4) failing to have appropriate promotional materials on a field ride with Mr. Sun, (5) failing to schedule two brand patient sales calls, and (6) failing to complete the number of required customer lunches.  (JA192-193.)  Ms. Faulkner testified that a Written Warning was a new term for what had previously been called probation.  (JA256:8-13.)  However, while the Written Warning advised Mr. Fell—just as the Notice of Probation advised Ms. Jones (JA179)—that he would be deemed as not sufficiently meeting expectations for year, it did not state that he would be ineligible for a base pay increase, promotional consideration, and [a] Total Equity Program ("TEP") grant, if applicable, or that he would be ineligible for any incentive pay under the Premier Rewards Plan, as was stated in Ms. Jones's Notice of Probation.  (JA179-180.)  Rather, the Written Warning merely stated that Mr. Fell would be subject to a 50% financial penalty in the amount of his Premier Rewards Plan annual incentive target for 2020.  (JA194.)

## SUMMARY OF THE ARGUMENT

The District Court made two fundamental errors in granting summary judgment in this case.  First, the court misapplied the *McDonnell Douglas* shifting burden framework in this disparate discipline case by focusing its inquiry on whether Ms. Jones was satisfactorily performing her job.  When an employee asserts a claim for discriminatory discipline, this Court has stated that the critical inquiry is whether

14

a similarly situated individual not in the protected class was subject to lesser discipline for a comparable offense. The District Court's discussion of Ms. Jones's purportedly unsatisfactory performance was relevant only to a determination of whether her performance was comparable to that of the identified comparator, Brandon Fell. The court erred in concluding that her unsatisfactory performance undermined her prima facie case of discrimination. It also erred in finding that evidence of Ms. Jones's unsatisfactory performance was sufficient to rebut any argument that her performance was a pretext for discriminatory discipline, since the pertinent inquiry was whether her performance was a legitimate nondiscriminatory reason for giving her harsher discipline than was applied to a White Male co-worker with unsatisfactory performance.

Second, the District Court erred in failing to apply the correct summary judgment standards in two ways. The District Court made credibility determinations that should have been left to the jury, and the District Court failed to view the evidence in a light most favorable to the nonmoving party, here, Ms. Jones. The District Court's conclusion that Ms. Jones should not be allowed to present her claims of race and sex discrimination and retaliation rested on findings that Ms. Jones failed to show that she was satisfactorily performing her job, failed to show that other employees who were not Black or Female were treated more favorably than she was, and failed to rebut Lilly's assertion that she was placed on probation

15

due to her unsatisfactory performance and not because she complained to Lilly's Human Resources Department about race and sex discrimination. In reaching these conclusions, the District Court improperly discounted the credibility of other Black employees under Mr. Sun's supervision that he treated Black employees more harshly than White employees and improperly failed to view evidence of Ms. Jones's job performance and the discipline of Mr. Fell in a light most favorable to Appellant.

## ARGUMENT

### I. THE DISTRICT COURT MISAPPLIED THE MCDONNELL DOUGLAS SHIFTING FRAMEWORK APPLICABLE TO CLAIMS OF DISPARATE DISCIPLINE

#### A. Standard Of Review

This Court "review[s] the district court's grant of summary judgment de novo, applying the same legal standards as the district court and viewing the facts and inferences drawn from the facts in the light most favorable to . . . the nonmoving party." *Evans v. Techs. Applications & Serv. Co., 80* F.3d 954, 958 (4th Cir. 1996). A grant of summary judgment is proper only when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court may not weigh the evidence or judge credibility. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015). While summary judgment may be appropriate in an employment discrimination case if the standard of Rule 56(c) is met, "courts must take special care in cases such as the

instant one because motive often is the critical issue in employment discrimination cases," and "'summary judgment is seldom appropriate in cases wherein particular states of mind are decisive as elements of [a] claim or defense.'" *Ballinger v. N.C. Agriculture Extension Serv.*, 815 F.2d 1001, 1005 (4th Cir.) (quoting *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)), *cert. denied*, 484 U.S. 897 (1987).

### B.    The District Court Erred In Finding That Ms. Jones's Alleged Unsatisfactory Performance Defeated A Prima Facie Claim Of Disparate Discipline

This Court has long recognized that:

> To establish a prima facie case of racial discrimination in the enforcement of employee disciplinary measures under Title VII[1], the plaintiff must show: (1) that he is a member of the class protected by Title VII, (2) that the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees outside the protected class, and (3) that the disciplinary measures enforced against him were more severe than those enforced against those other employees.

*Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993) (citing *Moore v. Charlotte*, 754 F.2d 1100, 1105-06 (4th Cir. 1985)); *see also Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011); *Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir. 2008); *Taylor v. Va. Union Univ.*, 193 F.3d 219, 234 (4th Cir.

---

[1] The District Court and both parties agreed that for purposes of the motion for summary judgment the Title VII standards apply to the claims under the MFEPA and 42 U.S.C. § 1981.

17

1999), *cert. denied*, 528 U.S. 1189 (2000). This three-step inquiry does not represent an abandonment of the shifting burden framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Rather, as this Court recognized in *Moore*, the analysis represents an appropriate modification to the circumstances, anticipated by the Supreme Court in *McDonnell Douglas*. *Moore v. Charlotte*, 754 F.2d 1100, 1105 (4th Cir. 1985).

However, rather than analyze Ms. Jones's sex and race discrimination claims in Counts I and III as ones for discriminatory discipline, the District Court improperly evaluated the claims under the pure *McDonnell Douglas* framework, and asked whether: (1) Ms. Jones was a member of a protected class; (2) Ms. Jones was performing her job in a satisfactory manner; (3) Lilly took adverse action against her; and (4) Ms. Jones was treated differently from similarly situated employees outside the protected class. (JA265.) While the court correctly, if unnecessarily, found that Appellant suffered an adverse action (JA268-269),[2] its three-page discussion of what the court concluded was a lack of evidence of Ms. Jones's satisfactory job performance[3] detracted from and diminished the relevant inquiry,

---

[2] Lilly did not contest that Ms. Jones was a member of a protected class. (JA265.)

[3] In evaluating her job performance, the District Court referred to evidence that in her five years with Lilly, Ms. Jones had received three unsatisfactory performance ratings from multiple supervisors of different genders and races. (JA268.) It is questionable whether it is appropriate to go back more than five years to evaluate the level of performance at the time of the adverse employment action. *See Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 516 (4th Cir.), *cert denied*, 549 U.S. 812 (2006)

that is, whether Ms. Jones was subjected to harsher discipline than White Male Brandon Fell for comparable conduct. Under the framework for analyzing a discriminatory discipline claim, set forth above, a finding of unsatisfactory performance by itself will not defeat a prima facie case of discrimination because the imposition of discipline presumes some level of unsatisfactory conduct. Although Ms. Jones disagrees with Mr. Sun's assessment that she was not performing up to Lilly's standards, for purposes of addressing a prima facie case on summary judgment, the quality of her performance is relevant only insofar as it is compared to that of Brandon Fell, the White Male comparator identified by Ms. Jones. The critical inquiry is whether Appellant has raised a genuine issue of material fact as to whether she was subjected to more severe discipline because of her race and/or sex.

---

("The further back in time a court goes to evaluate an employee's performance, the more removed the evidence is from the time of the termination.") However, to the extent Ms. Jones's entire history is relevant to the discipline imposed by Mr. Sun, it should be pointed out that after a rocky start in the Baltimore district (JA54:15-55:12, JA59:9-15), Ms. Jones received satisfactory ratings for two years in that district (JA60:13-61:17, JA258). Moreover, Timothy Schott, the White Male Executive Sales Representative with whom she teamed in the Baltimore district spoke highly of her skills. (JA222:11, 223:7-9, JA244:18-19.) It was only upon her transfer to the Washington, D.C. district, followed immediately by a planned maternity leave and an unexpected medical leave that she again received an unsatisfactory rating (JA65:13-22, JA196 at ¶¶ 11-13) and was ultimately put on a PIP and then probation by Mr. Sun (JA106:17-19; 128:14-19, JA173-180, JA197 at ¶ 19).

19

To the extent that the District Court considered Ms. Jones's treatment in comparison to that of Mr. Fell—as step 4 of the generic *McDonnell Douglas* framework rather than as step 2 of the discriminatory discipline inquiry—the court was "dubious" as to whether Mr. Fell was a proper comparator because it found there was insufficient evidence that Mr. Fell and Ms. Jones "were reprimanded for the same or similar conduct." (JA283.) The court emphasized that Appellant was disciplined for deficient pre-call planning, but Mr. Fell was noted to have good pre-call planning and was disciplined for using unapproved electronic resources and failing to use all promotional materials. (JA283.)

The District Court construed the requirements of a comparator too narrowly.

> [T]his Court has emphasized that a comparison between similar employees "will never involve precisely the same set of work-related offenses occurring over the same period of time and under the same sets of circumstances." *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993). Rather, to establish a valid comparator, the plaintiff must produce evidence that the plaintiff and comparator "dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)) (alterations in original).

*Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223-24 (4th Cir. 2019) (plaintiff Haynes established a prima facie case because Hicks and Haynes were appropriate comparators, subject to the same standards and engaged in similar conduct, but Hicks received more favorable treatment). In this case, both Ms. Jones and Mr. Fell

20

were supervised by Mr. Sun in the second half of 2019, as sales representatives they were subject to the same standards, and although their individual infractions were not identical, they were similar in that all involved perceived deficiencies in client engagement by failing to meet with clients an approved number of times, failing to provide information pertinent to the client, and failing to communicate with Mr. Sun. Moreover, there was some overlap in that each was criticized for the inadequate scheduling of client lunches and for failure to communicate with Mr. Sun. (JA178-179, JA192-192.) And in each case, their final discipline, probation in Ms. Jones's case, and, later, a Written Warning in Mr. Fell's case, could lead to termination (JA255:17-22), so clearly Lilly believed that the gravity of their offenses was equal.

Notwithstanding these commonalities, the District Court stated, "These differentiating circumstances leave the Court unable to determine whether any disciplinary disparity is attributable to Plaintiff's sex/race or simply the differences in Mr. Fell's actionable conduct." (JA270.) However, Ms. Jones's complaints about Mr. Sun's dismissive treatment of her, coupled with the observations of Jazmine Perry, William White, Sonya Raikar, and Krystal Allen that Mr. Sun treats women and persons of color (Ms. Raikar is Asian Indian) more harshly than White men and women, *see infra* Point II(B), was sufficient to raise a genuine issue of material fact as to Mr. Sun's motivation for disciplining Appellant.

Not only did the District Court err in finding that Mr. Fell was not a proper comparator, but it failed to recognize that Ms. Jones and Mr. Fell were not subject to the same level of discipline. The court reasoned that because Ms. Faulkner explained that Mr. Fell's Written Warning was just an updated version of probation, Appellant's probation was not more severe discipline than that handed out to Mr. Fell. (JA270.) However, a comparison of Ms. Jones's Notice of Probation with Mr. Fell's Written Warning shows that while both were advised that they would receive an unsatisfactory rating as a consequence of the discipline (JA179, JA194), Mr. Fell was told that he would be subject to a 50% financial penalty in the amount of his Premier Rewards Plan annual incentive target for 2020 (JA194), but Ms. Jones was instructed that she would be ineligible for a base pay increase, promotional consideration, and [a] TEP grant, if applicable, and that she would be ineligible for any incentive pay under the Premier Rewards Plan, as was stated in Ms. Jones's Notice of Probation (JA179-180). Furthermore, because prior to her probation Ms. Jones was disciplined with the imposition of a PIP—unlike Mr. Fell, who was given a satisfactory rating at the end of 2019, in spite of that fact that he had "missed many fundamental metrics" (JA237)—she was ineligible for promotion three months before her final discipline. (JA197 at ¶ 19). In light of this unexplained discrepancy in the penalties imposed on Ms. Jones and Mr. Fell, which went unaddressed by the

22

District Court, it was improper for the court to conclude that "there is no evidence that Mr. Fell was treated more favorably." (JA271.)

### C. The District Court Erred In Finding That Ms. Jones's Alleged Unsatisfactory Performance Was A Legitimate Nondiscriminatory Reason For Placing Her On Probation

Having failed to address the evidence of the different penalties imposed on Mr. Fell and Ms. Jones for discipline which Lilly claims is comparable, since both a written warning and probation can lead to termination, the District Court was premature in concluding that Lilly's explanation for the discrepancy was not pretextual. As discussed in Point I(B), *supra*, the critical inquiry in a discriminatory discipline case is whether the plaintiff was subject to harsher discipline than someone outside the protected class who had engaged in comparable conduct. The court accepted as nonpretextual Lilly's explanation that Ms. Jones's unsatisfactory performance justified her discipline. However, the court did not address whether Appellant's unsatisfactory performance justified harsher discipline than that applied to Mr. Fell. Furthermore, even if it were appropriate to consider only whether the decision to discipline Ms. Jones was justified, there was sufficient evidence in the record to raise a genuine issue of material doubt as to whether the reason for her probation was pretextual. *See infra* Point II(B). For these reasons, the decision of the District Court on the discriminatory discipline claims (Counts I and III) should be reversed and this matter should be remanded for trial.

23

## II. THE DISTRICT COURT MISAPPLIED THE SUMMARY JUDGMENT STANDARD BY MAKING CREDIBILITY DETERMINATIONS AND FAILING TO WEIGH THE EVIDENCE IN A LIGHT MOST FAVORABLE TO MS. JONES IN CONCLUDING THAT APPELLANT FAILED TO MAKE OUT A PRIMA FACIE CASE OF RACE AND/OR SEX DISCRIMINATION

### A. Standard Of Review

This Court reviews a grant of summary judgment de novo. *See supra* Point

I(A).

### B. The District Court Improperly Weighed The Credibility Of Witnesses And Failed To View The Evidence In A Light Most Favorable To Ms. Jones

In an employment discrimination claim, the plaintiff's ultimate goal is to prove that she suffered an adverse employment action for a discriminatory reason. Proof of motive can often be elusive, but "[a] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147-48 (2000). In this case, in addition to her own complaints about Mr. Sun's dismissive and hostile treatment of her over several months, Appellant offered extensive evidence that Black and/or Female co-workers were treated more harshly than their White or Male counterparts, but the court did not view the evidence in a light most favorable to Appellant, as required on summary judgment. *See Evans*, 80 F.3d at 958.

24

The District Court referred to Grace Faulkner's investigation into Ms. Jones's complaints of discriminatory and unfair supervision, only to recite Ms. Faulkner's conclusion that Ms. Jones's complaint was unfounded (JA264). There was no mention of the contents of the investigation report, which demonstrated, in part, that women of color, such as Krystal Allen and Sonya Raikar, found him to be overly negative and critical, while White Females thought he was a good supervisor. (JA226-229.) The District Court omitted any discussion of comments made to Ms. Faulkner by Ms. Allen stating that Mr. Sun had made her cry on a field ride, was attacking and not motivating and by Ms. Raikar stating that he was "demotivating." (JA227-228.)

The decision of the District Court did not even acknowledge, let alone discuss, the affidavit of Jazmine Perry, another Black Female who was supervised by David Sun in 2019. Like Appellant, Ms. Perry stated that Mr. Sun was aggressive and demanding during ride-alongs, falsely omitted any positive performance from his written reports, gave her a misleading performance review, over-scrutinized her performance, and was overall hostile to other Black employees under his supervision while being encouraging and supportive to White employees. (JA239-242.) This omission suggests that not only did the District Court fail to view the evidence in a light most favorable to Ms. Jones, but the court improperly weighed the credibility

of Ms. Perry and found her statements incredible.  This, of course, is not permitted on summary judgment.  *See Jacobs*, 780 F.3d at 569.

Similarly, the District Court ignored the affidavit of William White (JA230-233).  While the court pointed out Mr. White's unsworn comments to Mr. Ruth in November 2019, when Mr. Ruth investigated additional complaints of discrimination by Mr. Sun, that there was a 50/50 chance that Mr. Sun was targeting Black employees and that Mr. Sun's behavior was not about race and more about how he runs his team like a dictatorship (JA262), there was no attempt to reconcile those statements with the sworn statement submitted in support of Appellant's response to the motion for summary judgment, in which Mr. White explained  that upon further consideration he believed that race played a role in Mr. Sun's treatment of him.  (JA232 at ¶¶ 23-24.)  Mr. White stated that he did not feel comfortable complaining about Mr. Sun to Human Resources since he was a new sales representative and did not want to be seen as a troublemaker.  (JA231 at ¶ 14.)  In his affidavit, Mr. White also outlined ways in which Mr. Sun had treated him differently from his White colleagues, including talking "at" him, rather than "to" him, magnifying Mr. White's mistakes and minimizing his successes, falsely accusing Mr. White of lying, and telling Mr. White he "did not like [his] style." (JA230-232 at ¶¶ 7-10, 12-13, and 19.)  In giving greater weight to unsworn comments Mr. White made to Lilly's Human Resources Department while he was a

new sales representative than to his affidavit, the court effectively both gave greater credibility to the unsworn statements and failed to view the evidence in a light most favorable to Ms. Jones.

While the court certainly is not called to sit as a personnel department, *see DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998), where, as here, Ms. Jones has proffered significant evidence of discriminatory motive, including comparator evidence, *see Laing v. Fed. Express Corp.*, 703 F.3d 713, 719-20 (4th Cir. 2013) (comparator evidence is especially relevant to a showing of pretext), the District Court should have allowed a jury to consider whether that evidence is sufficient to establish that Appellant was given harsher discipline than a White Male counterpart because of her race and/or sex. Therefore, this Court should reverse the decision of the District Court granting summary judgment on the discriminatory discipline claims (Counts I and III) and remand for trial.

## III. THE DISTRICT COURT MISAPPLIED THE SUMMARY JUDGMENT STANDARD BY MAKING CREDIBILITY DETERMINATIONS AND FAILING TO WEIGH THE EVIDENCE IN A LIGHT MOST FAVORABLE TO MS. JONES IN CONCLUDING THAT APPELLANT COULD NOT MAKE OUT A RETALIATION CLAIM BECAUSE SHE FAILED TO REBUT LILLY'S PROFFERED EVIDENCE THAT MR. SUN PUT HER ON PROBATION DUE TO UNSATISFACTORY JOB PERFORMANCE

### A.    Standard Of Review

This Court reviews a grant of summary judgment de novo. *See supra* Point I(A).

**B.** **The District Court Improperly Weighed The Credibility Of Witnesses And Failed To View The Evidence In A Light Most Favorable To Ms. Jones**

The District Court correctly found that Ms. Jones had stated a prima facie case of retaliation (JA272-274), but concluded that there was insufficient evidence in the record from which a reasonable juror could conclude that the stated reason for disciplining[4] Ms. Jones—her alleged poor performance—was pretextual (JA276). Relying on *Francis v. Booz, Allen & Hamilton, Inc., 45*2 F.3d 299, 309 (4th Cir. 2006) ("'Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.' *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001)"), the court concluded that because Jacqueline Porter had given Ms. Jones an unsatisfactory evaluation six months before she complained about Mr. Sun and engaged in protected activity and because Mark Hudson had told her that she would be placed on a PIP three months before she engaged in protected activity, no jury could find that Appellant's complaints about Mr. Sun were the "but for cause" of her being placed on probation.  (JA275.)

The court's reference to a "pattern of gradual adverse job actions" (JA275) overlooks prior satisfactory performance in the Baltimore district, where Appellant

---

[4] The District Court mistakenly said "terminating," instead of "disciplining." (JA276.)

received satisfactory ratings in the two years immediately preceding her transfer to the Washington, D.C. district (JA60:13-61:17, JA258) and earned the praise of Timothy Schott, her White Male Executive Sales Representative teammate in the Baltimore district (JA222:11, 223:7-9, JA244:18-19).  It also ignores the fact that Ms. Jones challenged the fairness of Ms. Porter's 2018 unsatisfactory rating since her assessment did not take into account seven months of time missed due to a planned maternity leave followed by an unexpected medical leave, or Ms. Jones's inability to attend pre-call planning training after giving birth.  (JA65:13-22, JA196 at ¶¶ 10-14.)  Significantly, the court's finding that probation was an inevitable consequence of Ms. Jones's poor performance is brought into doubt by the evidence of discriminatory motive, *see supra* Point II(B), including Appellant's charges that Mr. Sun did not assist her in meeting the goals of her PIP.  (JA198 at ¶¶ 23-24.)  Viewing all of this evidence in a light most favorable to Appellant, a reasonable jury could conclude that Mr. Sun did not place Ms. Jones on probation because of her poor performance, but, rather, he retaliated against her for complaining about his discrimination on account of race and sex.  Therefore, this Court should reverse the decision of the District Court granting summary judgment on the retaliation claims (Counts II and IV) and remand for trial.

## CONCLUSION

For the foregoing reasons, the judgment of the District Court granting summary judgment should be reversed, and this matter should be remanded for a trial on the merits.

Dated: July 7, 2023                        Respectfully submitted,

/s/ Janice Williams-Jones
Janice Williams-Jones (#25701)
Law Office of Janice Williams-Jones
3201 Rogers Avenue, Suite 301
Ellicott City, Maryland 21043
Ph: 410-203-1246
lawofficeofjwjones@gmail.com
*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE

The foregoing BRIEF OF APPELLANT complies with the type-volume limits of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this brief contains 7,212 words.

The foregoing BRIEF OF APPELLANT complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) & (6) because the document was prepared in a proportionally-spaced typeface using Microsoft Word in Times New Roman 14-point font.

Dated:        July 7, 2023                         /s/ Janice Williams-Jones
                                                   Janice Williams-Jones (#25701)
                                                   Law Office of Janice Williams-Jones
                                                   3201 Rogers Avenue, Suite 301
                                                   Ellicott City, Maryland  21043
                                                   Ph:  410-203-1246
                                                   lawofficeofjwjones@gmail.com
                                                   *Counsel for Plaintiff-Appellant*

## CERTIFICATE OF SERVICE

I certify that on July 7, 2023, the foregoing BRIEF OF APPELLANT was

served on Defendant-Appellee through its counsel of record listed below via the

CM/ECF system:

Matthew A. Fitzgerald, Esq.
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA  23219

/s/ Janice Williams-Jones
Janice Williams-Jones (#25701)
Law Office of Janice Williams-Jones
3201 Rogers Avenue, Suite 301
Ellicott City, Maryland  21043
Ph:  410-203-1246
lawofficeofjwjones@gmail.com
*Counsel for Plaintiff-Appellant*